UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____

AMERIJET INTERNATIONAL, INC.,
a Florida corporation,

      Plaintiff,

v.

MIAMI-DADE COUNTY, FLORIDA, a political
subdivision of the State of Florida,
,

      Defendant.
_____/

## **COMPLAINT**

    COMES NOW, Amerijet International, Inc. ("Amerijet"), Plaintiff herein, and for its causes of action against the Defendant MIAMI-DADE COUNTY, FLORIDA ("County"), alleges and states the following:

### **Nature of the Action**

    1.    This is an action for declaratory and injunctive relief to declare unconstitutional and unenforceable against Amerijet, an airline and common carrier by air, Miami-Dade Code Section 2-8.9, also known as the Miami-Dade County local "living wage" ordinance ("LWO"). Plaintiff is challenging the living wage ordinance in that it violates Amerijet's rights under the U.S. Constitution. Plaintiff's claims are brought pursuant to 42 U.S.C. § 1983, and relief is sought under that section and under 42 U.S.C. § 1988 and 28 U.S.C. §§ 2201 and 2202.

    2.    The Ordinance is constitutionally infirm for several reasons. First, it violates the Supremacy Clause due to express preemption by the federal Airline Deregulation Act and/or implied field and conflict preemption by the Open Skies Agreements between the United States

1

and foreign nations, and U.S. Federal Aviation Administration and Transportation Security Administration regulations. Second, it violates the Commerce Clause by placing illegal burdens on international and interstate commerce.

3.      To redress irreparable harm to its rights, Plaintiff seeks declaratory and injunctive relief, and seeks compensatory and nominal damages to redress past legal injuries.

### Parties

4.      Amerijet International, Inc. is an airline incorporated under the laws of the State of Florida. It is an air carrier certificated by the United States Federal Aviation Administration ("FAA") pursuant to 14 C.F.R. Part 121, and regulated by the FAA and the Transportation Security Administration of the U.S. Department of Homeland Security ("TSA"). Amerijet is a "common carrier by air engaged in interstate or foreign commerce", and therefore also is a "carrier" within the meaning of the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq*. Amerijet's corporate office is located in Fort Lauderdale, Florida, and its on-airport operations are located at Miami International Airport ("MIA"), at Amerijet's ramp-side facility in Building 716 of the airport's cargo area and the ramp adjacent to that facility.

5.      Defendant Miami-Dade County is a municipal corporation located in the State of Florida, existing under the Constitution and laws of the State of Florida, and is a corporate entity capable of suing and being sued. Miami International Airport is the property of Miami-Dade County and is operated by the Miami-Dade Aviation Department ("MDAD") of the County.

### Jurisdiction and Venue

6.      This Court is vested with original jurisdiction over the federal claims by operation of 28 U.S.C. §§ 1331, 1343 and 1367, and has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear claims arising under Florida law.

7. This action arises under the United States Constitution; in particular Article VI, Clause 2 (the "Supremacy Clause") and Article I, Section 8, Clause 3 (the "Commerce Clause") and 42 U.S.C. §§ 1983, 1988. Declaratory and other relief is authorized by the Federal Declaratory Judgment Act, as amended, 28 U.S.C. §§ 2201 and 2202.

8. Venue is proper in the United States District Court for the Southern District of Florida under 28 U.S.C. § 139l(b), because Plaintiff and Defendant reside in the District, and because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this judicial district.

## Factual Allegations

### A. Amerijet's Operations at MIA

9. Amerijet is an all-cargo airline engaged in foreign commerce serving the Caribbean and Latin America, and is qualified as a small business concern according to U.S. Small Business Administration standards.

10. Plaintiff's U.S. flights originate from and terminate at MIA. In addition to its aircraft flight operations, Amerijet is engaged at MIA in the loading and unloading of cargo and other ramp services, the receiving and warehousing of cargo transported or to be transported by air, and dispatch and communications services, for itself and during certain pertinent periods of time for another airline.

11. Plaintiff currently has a lease for warehouse space and other on-airport operations in Building 716A and B at MIA, and for use of certain aircraft parking positions adjacent to that space, with Miami-Dade County as lessor, lease number C005690, with a five-year term. Before entering into the current lease commencing in April of 2010, Amerijet had a prior lease for this space with the County, lease number C002554.

12. Neither Amerijet's current lease, nor its prior lease, contains any explicit reference to the Miami-Dade Living Wage Ordinance or payment of the Living Wage pursuant to that Ordinance, or any agreement to produce documents and records relating to payroll and compliance with that Ordinance.

13. From about February of 2010 until November 1, 2011, in addition to handling its own cargo, Amerijet handled the cargo of another airline, British Airways ("BA"), at or from Amerijet's leasehold at MIA.

14. According to the County an "airline with leasehold" such as Amerijet may provide "Cargo Handling Services" at MIA, defined as the "provision of warehousing, warehouse services, and/or transportation of cargo and loading/unloading of cargo on the Airport", for up to two non-equity interest airlines in and from its own leasehold premises, and may handle cargo for alliance, code share and feeder carrier agreement partners without limitation.

15. Upon information and belief, Amerijet was not during the pertinent period the only "airline with leasehold" at MIA handling cargo for another carrier in addition to its own cargo. Upon further information and belief, there are at present "airlines with leasehold" providing cargo handling services for other airlines at MIA.

**B.   The Miami-Dade County Living Wage Ordinance**

16. The Miami-Dade County Living Wage Ordinance ("LWO"), Miami-Dade Code Section 2-8.9, County Ordinance 99-44 as amended, requires, *inter alia*, that any "covered employer" pay employees performing "Covered Services" in or from Miami-Dade County Aviation Department facilities no less than the applicable hourly "living wage" rate, with or without health benefits, according to the "Living Wage" provisions of that Ordinance. The

living wage rate or "Living Wage" is set by the County from time to time and is higher than the state and federal minimum wage rate.

17. A "covered employer" pursuant to the Ordinance is any "service contractor", which in turn includes an individual, business entity, corporation or other business which "provides any of the Covered Services as defined herein at any Miami-Dade County Aviation Department facility including Miami International Airport pursuant to a permit, lease agreement or otherwise."

18. "Covered Services" at MDAD Facilities at MIA are enumerated in the Ordinance and include without limitation "Ramp Service" and "Dispatching and Communications Services" as defined in the Ordinance, and "in-warehouse cargo handling".

19. The "Implementation" provisions of the Ordinance require in part the maintenance of certain payroll records, the reporting of payroll data, and the reporting of other employment activity by a "covered employer" as specified in the Ordinance.

20. The "Compliance" provisions of the Ordinance provide in pertinent part that:

> The service contractor shall permit County employees, agents, or representatives to observe work being performed at, in, or on the project or matter for which the service contractor has a contract. The County representatives may examine the books and records of the service contractor relating to employment and payroll to determine if the service contractor is in compliance with the provisions of this Chapter.

21. The "Enforcement" provisions of the Ordinance provide for an administrative complaint procedure before the County, which allows for sanctions for violation of the Ordinance, which may include suspension or termination of the covered employer's contract with the County. The Enforcement provisions also state that "Any covered employee of a service contractor, or any person who was formerly a covered employee of a service contractor, may instead of the County administrative procedure … bring an action by filing suit against the

covered employer in any court of competent jurisdiction to enforce the provisions of this Chapter and may be awarded back pay, benefits, attorney's fees, and costs."

22. In connection with either the private right of action or administrative complaint of any covered employee, the "Enforcement" provisions state the County or court "may also impose sanctions on the employer, including those persons or entities aiding or abetting the employer, to include wage restitution to the affected employee and damages payable to the covered employee in the sum of up to five hundred dollars ($500.00) for each week each employer is found to have violated this Chapter." Allegations of retaliation or discrimination for an employee asserting rights under the Ordinance, if found by the County or a court, "shall result in an order of restitution and reinstatement of a discharged employee with back pay to the date of the violation or such other relief as deemed appropriate" and an additional sanction of up to $500 for each week since the employee was discharged.

23. As presently published, and in the Ordinance as provided to Amerijet by the County in connection with the County's Request for Information under the Ordinance, the Ordinance contains no severability provision.

### C. The Application of the LWO to Amerijet

24. In June of 2010, the Miami-Dade County Department of Small Business Development ("SBD"), which has been administratively assigned responsibility for enforcing the Living Wage Ordinance, sent Amerijet a "Request for Information" relating to the LWO. The correspondence referenced Amerijet's lease with the County at MIA, stated that Amerijet as a permittee/lessee was required to ensure compliance with the Living Wage under the Living Wage Ordinance, and stated that "Cargo, ramp and in-warehouse cargo services are covered services pursuant to" the Ordinance.

25. The correspondence from the County's SBD Department further stated that the County "has received a complaint from an Amerijet employee who indicated that Amerijet has started providing cargo services for British Airways and other airlines and are not [sic] being paid a living wage", and concluded:

> Please be advised that the Amerijet employees providing this service on behalf of Amerijet for other airlines are covered by the living wage and must be paid accordingly.[1]

26. After receiving the County's correspondence asserting the SBD's position that the LWO applied to Amerijet's employees performing "Covered Services" to another airline, specifically those employees providing in-warehouse cargo handling services to BA, Amerijet through outside counsel contacted the County Attorney's office to advise the County that the Ordinance did not appear to apply to Amerijet and requested a legal opinion from the County on the issue. As of the bringing of this action, the County Attorney's office has not issued a legal determination as to whether the Ordinance applies to Plaintiff.[2]

---

[1] The County's June 2010 correspondence also requested information for the SBD's review of the administrative complaint from the unnamed Amerijet employee. However in early July, 2010, an extension of time was granted by the SBD for compliance with the information requests until such time as the County, through the County Attorney's office, made a determination as to legal issues relating to the application of the Ordinance to Amerijet.

[2] While the question of the application of the Living Wage Ordinance to Amerijet has been pending before the County Attorney's office for decision, the County Attorney has issued three opinion letters regarding other state or local laws which the County Attorney opined were preempted by federal law. Based upon the County Attorney's reasoning in these three matters, Amerijet has and has had a good faith belief that the County Attorney would also find the Living Wage Ordinance preempted by the U.S. Constitution and/or federal law as to its application to Amerijet. The last such Opinion Letter was issued on March 21, 2012 and involved then-proposed House Bill 959, which would require the County to obtain an affidavit from its vendors certifying that they do not engage in business with Cuba. The County Attorney concluded that such a law would be preempted by the Supremacy Clause of the U.S. Constitution. Subsequent to issuance of that opinion from the County Attorney's office, Odebrecht Construction, Inc. brought an action in this Court against Ananth Prasad, in his official capacity as Secretary of the Florida Department of Transportation, seeking declaratory and injunctive relief to declare unconstitutional and unenforceable House Bill No. 959 consistent with that opinion. *See*

27. In the absence of a legal determination from the County Attorney's office as to whether the LWO applies to an airline's own cargo handlers, in an effort to avoid the need for such a determination and to avoid the accumulation of back pay obligations and potential sanctions under the Ordinance in the event the Ordinance did apply to Amerijet's cargo handlers, on April 29, 2011, Amerijet outsourced its in-warehouse cargo handling services to a third party cargo handling services contractor at MIA.

28. Following Amerijet's outsourcing of certain "Covered Services" under the Ordinance, in May of 2011 an unfair labor practice charge was filed with the National Labor Relations Board ("NLRB") on behalf of these outsourced employees, asserting that the outsourcing of the cargo handling services was in violation of the employees' rights under Section 7 of the National Labor Relations Act ("NLRA"). When the NLRB failed to dismiss the charge, Amerijet brought a declaratory judgment action in this Court, seeking a declaration that because Amerijet is a "common carrier by air engaged in interstate or foreign commerce", 45 U.S.C. § 181, and is therefore a "carrier" as defined in the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.*, Amerijet and its employees are outside the jurisdiction of the NLRA and NLRB. *See Amerijet Int'l, Inc. v. NLRB et al.*, Case No. 1:11-cv-22919-JEM. That action remains pending as of the bringing of this action.[3]

29. Despite the outsourcing of its cargo handlers at MIA, and the termination of its Cargo Handling Services for cargo of British Airways effective November 1, 2011, Amerijet has been the target of an action in state court by certain of its outsourced cargo handlers according to

---

*Odebrecht Construction, Inc. v. Prasad,* Case No. 1:12-cv-22072-KMM (S.D. Fla.), currently pending.

[3] Both this action and the pending action against the NLRB seek declaratory relief predicated upon Amerijet's status as an airline and an air carrier under federal law.

the "private right of action" provided for in the Ordinance, seeking payment of the Living Wage during their employment with Amerijet and seeking monetary sanctions and attorney's fees.[4]

30. The Ordinance by its terms adversely affects Amerijet, by imposing Living Wage payment obligations in excess of what Amerijet would otherwise be required to pay to its employees providing "Covered Services" to Amerijet itself and to other airlines to which Amerijet might be engaged to provide such services at MIA. Amerijet is harmed by the "Implementation" and "Compliance" provisions of the Ordinance as applied to Amerijet, by the information disclosure required under that Ordinance of confidential and proprietary business information, including information pertaining to the pay and employment duties and responsibilities of Amerijet's employees at MIA.

31. Amerijet is further harmed by application of the Enforcement provisions of the Ordinance to Amerijet by the risk of sanctions, including suspension or termination of Amerijet's lease and monetary penalties, and by the threat of further civil actions against Amerijet by current or former "covered employees" under the Ordinance.

32. Amerijet has suffered and will suffer harm by the County's application of the Ordinance to Amerijet despite Amerijet's status as an airline, by interference with Amerijet's rights and the undue burden upon its employment relationships and its business and potential business providing "Covered Services" for itself and to other airlines.

---

[4] Certain of these outsourced cargo handlers also brought a federal court lawsuit against Amerijet, alleging that Amerijet's outsourcing of its in-warehouse cargo handling services at MIA and the resulting termination of Amerijet's cargo handlers employed at MIA violated the RLA. *See Diaz et al. v. Amerijet International, Inc.*, Case No. 0:11-cv-61812-CMA. In that action the application of the Ordinance to Amerijet was potentially before the Court for decision only in connection with Amerijet's motion in limine. Because the case was resolved in mediation, the case was administratively closed as of June 7, 2012 without the court even potentially reaching the issue presented in this action.

9

### D.     The Airline Deregulation Act

33. In 1978, Congress enacted the federal Airline Deregulation Act ("ADA") in an effort to ensure "maximum reliance on competitive market forces" which would favor lower airline fares and better service. *Morales v. Trans World Airlines, Inc.*, 504 US 374, 378 (1992). To "ensure that the States would not undo federal deregulation with regulation of their own," the ADA included an express preemption provision which states:

> Except as provided in this subsection, a State, political subdivision of a State or political authority of at least 2 States may not enact or enforce a law, regulation or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart.[5]

49 U.S.C. §41713(b)(l) (emphasis added).

34. Amerijet is an "air carrier" for purposes of the ADA.

35. The U.S. Supreme Court has adopted the standard that state or local enforcement actions "having a connection with or reference to airline rates, routes or services are pre-empted under [the ADA]." *Morales*, 504 U.S. at 384. In doing so, the Supreme Court expressly rejected the notion that preemption only applies to state or local laws that either specifically address the airline industry or seek to directly regulate pricing, routes or services offered. *Id*. at 385-86. Rather, a state or local law may still be preempted even if the effect on the price, route or service is only indirect, so long as it is not "too tenuous, remote or peripheral...." *Id.* at 386, 390.

36. In 2008 the U.S. Supreme Court interpreted what constitutes a "service" under the ADA's preemption provision, overturning earlier cases which significantly limited the scope of this term. *See Rowe v. New Hampshire Motor Transport Assoc.*, 552 U.S. 364 (2008). In light

---

[5] When Congress re-codified Title 49 of the United States Code, the original "relating to rates, routes or services" language was slightly rephrased to read "related to price, route or service." Such changes have been held inconsequential and not intended to affect the precedent interpreting these provisions. *See DiFiore v. American Airlines*, 646 F.3d 81, 85 (151 Cir. 2011), *cert. denied*, 132 S. Ct. 761 (2011).

of *Rowe*, it is clear that the ADA preempts the application of the Miami-Dade County LWO to Amerijet's employees engaged in "Covered Services" under that Ordinance.

37. Because the LWO also has a connection and effect on the price and routes of an air carrier, it is expressly preempted by the ADA on that basis as well.

### E. FAA and TSA Oversight and Regulation

38. The LWO is field preempted and/or conflict preempted by FAA and TSA oversight and regulation of aviation safety and security.

39. An airline implicates the fields of aviation safety and aviation security which federal law regulates to the exclusion of state and local regulation. Because application of the LWO to Amerijet as an airline constitutes regulation by the County of employees engaged in aviation safety and security related duties, and expressly seeks to regulate the terms of employment of such employees (as to those engaged in dispatch, flight communications and meteorological navigation services, which are "Covered Services") and further requires the provision of confidential information so that the County may determine which employees are engaged in safety or security related cargo handling duties and are thus "covered employees" with respect to cargo handling or ramp services, the LWO is field preempted as against an airline and may not be applied or enforced against Amerijet.

40. Alternatively because the LWO stands as an obstacle to the accomplishment and execution of the full purposes and objectives of the FAA and TSA as determined by Congress, the LWO is conflict preempted as against an airline and may not be applied or enforced against Amerijet.

41. Amerijet has a TSA-mandated and approved Full All-Cargo Aircraft Operator Standard Security Program (FACAOSSP), as required by TSA regulations, 49 CFR Part 1544.

The FACAOSSP contains provisions governing Amerijet's performance of ramp services (including the loading and unloading of aircraft), in-warehouse cargo handling, and traffic operations (including the receiving and documenting of cargo for transport by air). Such provisions constitute Sensitive Security Information that is controlled under 49 C.F.R. parts 15 and 1520 and may not be disclosed to persons without a "need to know" as defined in 49 C.F.R. parts 15 and 1520, except with the written permission of the Administrator of the Transportation Security Administration or the Secretary of Transportation, and unauthorized release may result in civil penalty or other action.

42. The "Implementation" and "Compliance" information and reporting requirements of the Ordinance would require Amerijet potentially to disclose its FACAOSSP or other Sensitive Security Information controlled under 49 C.F.R. parts 15 and 1520 to the County. Because such disclosure would conflict with TSA regulations, the "Implementation" and "Compliance" provisions are also preempted on this basis.

    **F.**    **Open Skies Agreements**

43. The federal government has negotiated "Open Skies" agreements between the United States and more than 100 other countries to eliminate government interference in commercial airline decisions about routes, capacity and pricing, allowing air carriers to provide liberalized and more affordable, convenient and efficient air service while also including provisions committing both governments to observe high standards of safety and security consistent with the Convention on International Civil Aviation.

44. The LWO is preempted by such Open Skies Agreements applicable to Amerijet and/or the airlines to which Amerijet has provided "Covered Services" or desires to provide "Covered Services" at MIA. Such treaties constitute implied preemption of the LWO because

they occupy the field as to the commercial terms for international civil aviation, including the "Covered Services" under the LWO, while incorporating the aviation safety and aviation security regulations of the federal government through the FAA and TSA. Alternatively the LWO is conflict preempted by the applicable Open Skies Agreements.

### G.     Florida Home Rule Charter Law

45.     The County is granted broad home rule and police powers under Florida law, however such powers are not without limits. As set forth in the Florida Constitution "[t]o the extent not inconsistent with the powers of existing municipalities or general law, [the County] may exercise all the powers conferred now or hereafter by general law upon municipalities." Art. VIII, § 6(f), Fla. Const.

46.     The private right of action established in the LWO alters the terms of employment established under State law and exceeds the County's power by contradicting State law.

### H.     Further Allegations of Law

47.     All acts of the Defendant, its officers, agents, servants, employees, or persons acting at its behest or direction, were done and are continuing to be done under the color and pretense of state law.

48.     Plaintiff has no adequate remedy at law to correct or redress the deprivations of its constitutional and civil rights.

49.     Unless and until the Living Wage Ordinance, in its entirety and/or separately as to the Living Wage, Implementation, Compliance and/or Enforcement provisions if deemed severable, are enjoined and declared unconstitutional as to application to and enforcement against Plaintiff, Plaintiff will suffer and continue to suffer irreparable injury.

50.     The Defendant will suffer no harm if the injunctive relief is granted to Plaintiff.

51. The harm to Plaintiff outweighs any harm to the Defendant.

52. The public interest is benefited when constitutional and civil rights are protected by the courts.

## COUNT I
### The Miami-Dade Living Wage Ordinance Violates the Supremacy Clause on its face or as applied to Amerijet

53. Plaintiff realleges Paragraphs 1-52 as if fully set forth herein.

54. This is an action for declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201-2201 and 42 U.S.C. § 1983 to have the Living Wage Ordinance declared an unconstitutional violation of the Supremacy Clause in Article VI, Clause 2 of the United States Constitution and to prevent the Living Wage Ordinance's implementation, application or enforcement against Amerijet.

55. The Supremacy Clause, U.S. Const., Art. VI, cl. 2, provides:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution of Laws of any State to the Contrary notwithstanding.

56. The Supremacy Clause mandates that Federal law preempts any state or regulation of any area over which Congress has expressly or impliedly exercised exclusive authority or which is constitutionally reserved to the Federal government.

57. By enacting, applying and/or enforcing the Living Wage Ordinance against Amerijet, Defendant has and is violating the Supremacy Clause of the United States Constitution as the Ordinance is expressly preempted by federal laws, treaties and regulations. In the alternative or additionally, the Ordinance is impliedly preempted due to the pervasive nature of the federal scheme, and/or because the Ordinance conflicts with federal law.

58. The Ordinance therefore is preempted by federal law under the Supremacy Clause and is unconstitutional and unenforceable.

WHEREFORE, Plaintiff requests entry of a declaratory judgment declaring the Miami-Dade County Living Wage Ordinance unconstitutional and unenforceable and enjoining Defendant from implementing or enforcing it against Amerijet, and respectfully prays that the Court grant the equitable and legal relief set forth hereinafter in the prayer for relief.

### COUNT II
### The Miami-Dade Living Wage Ordinance Violates the Commerce Clause

59. Plaintiff realleges Paragraphs 1-52 as if fully set forth herein.

60. This is an action for declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201-2201 and 42 U.S.C. § 1983 to have the Living Wage Ordinance declared an unconstitutional violation of the Commerce Clause in Article I, Section 8 Clause 3 of the United States Constitution and to prevent the Living Wage Ordinance's implementation, application or enforcement against Amerijet.

61. Article I, § 8 clause 3 of the U.S. Constitution grants Congress the power to "To regulate Commerce with foreign nations and among the several states, and with the Indian Tribes."

62. The LWO discriminates against and burdens foreign commerce by imposing restrictions and penalties on airlines such as Amerijet engaged in commerce with certain foreign nations, impeding the federal government's ability to "speak with one voice when regulating commercial relations with foreign governments." The LWO thus violates the foreign Commerce Clause of the U.S. Constitution and is unenforceable.

63. Additionally or in the alternative, federal regulation over the air transportation business, including the carriage or transport by aircraft in interstate or foreign commerce of

cargo by a common carrier for compensation or hire and activities directly related thereto, is undisputedly within the power granted to the federal government by the Commerce Clause. The handling of cargo at MIA, that has been or is to be transported by air in interstate or foreign commerce, is an activity directly related to the air transportation business which Congress has chosen to regulate. That power of Congress may not be limited, qualified, or impeded by state action attempting to regulate such on-airport cargo handling activities. Because the Ordinance seeks to regulate, qualify or limit Amerijet's cargo handling activities at MIA, it also runs afoul of the Interstate Commerce Clause of the U.S. Constitution.

WHEREFORE, Plaintiff requests entry of a declaratory judgment declaring the Miami-Dade County Living Wage Ordinance unconstitutional and unenforceable and enjoining Defendant from implementing or enforcing it against Amerijet, and respectfully prays that the Court grant the equitable and legal relief set forth hereinafter in the prayer for relief.

## COUNT III
### Violation of the Home Rule Charter

64. Plaintiff realleges Paragraphs 1-52 as if fully set forth herein.

65. As a home-rule-charter municipality, the County derives its legislative powers from the Constitution of the State of Florida.

66. The County is proscribed from exercising powers contrary to, or in limitation or enlargement of, state law.

67. The private right of action and other "Enforcement" provisions of the Ordinance exceed and conflict with state law and are thus unenforceable.

WHEREFORE, Plaintiff requests entry of a declaratory judgment declaring the Miami-Dade County Living Wage Ordinance unenforceable and enjoining the implementation or

enforcement of it against Amerijet, and respectfully prays that the Court grant the equitable and legal relief set forth hereinafter in the prayer for relief.

## Prayer for Relief

WHEREFORE, in light of the foregoing, Plaintiff respectfully requests that this Court:

A.  Adjudge and declare that the County Living Wage Ordinance violates the Constitution and laws of the United States, is void, and has no further legal effect as to Amerijet.

B.  Enjoin Defendant from requiring the provision of information or documentation pursuant to the Ordinance.

C.  Award Plaintiff the costs of litigation, including reasonable costs, expenses, disbursements, and reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988.

D.  Provide such other relief as may be just and proper.


Dated:  June 20, 2012

    Respectfully submitted,

    AMERIJET INTERNATIONAL, INC.
    JOAN CANNY, ESQ.
    Fla. Bar No. 0492531
    jcanny@amerijet.com
    2800 South Andrews Avenue
    Fort Lauderdale, FL  33316
    Telephone:     (954) 320-5367
    Facsimile:     (305) 423-3246
    By: *s/Joan Canny*
    *Attorney for Plaintiff*