UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 12-22304-CIV-COOKE/TURNOFF

AMERIJET INTERNATIONAL, INC.,

    Plaintiff,

vs.

MIAMI-DADE COUNTY, FLORIDA,

    Defendant.

_____/

## DEFENDANT'S RULE 7.5 STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant, Miami-Dade County ("County"), pursuant to Local Rule 7.5 (c) of the Southern District of Florida, files this Statement of Undisputed Material Facts in support of its Motion for Summary Judgment, filed on October 22, 2013. Defendant submits that the following facts are not in dispute for purposes of the County's Motion for Summary Judgment:

1. Miami International Airport ("MIA") competes for cargo and passenger traffic with numerous local and out-of-state airports, including Fort Lauderdale International Airport, Orlando Sanford International Airport, and Hartsfield-Jackson Atlanta International Airport. To attract airlines, MIA must offer services to airlines on terms that make business sense for those airlines. *See* Defendant Miami-Dade County's Rule 7.5 Statement of Facts in Opposition to Plaintiff's Motion for Partial Summary Judgment, Affidavit of Ken Pyatt, Exhibit 3 at ¶3 [DE 50-3]; Affidavit of Gregory Owens, Exhibit 1 at ¶2 [DE 50-1]. To ensure that MIA can compete with these other airports, MIA routinely negotiates lease terms. *See* [DE 50-1] at ¶2.

2. Moreover, where it is in the best interest of MIA, we have worked with airlines to exempt airlines from otherwise applicable County contracting requirements. For example, the County has a requirement that County contractors over a certain size have an affirmative action plan. Certain foreign air carriers could not comply with this Contract requirement. As that requirement impacted their ability to continue air-service to MIA, the County through MDAD

supported the passage of Miami Dade County Resolution R-803-09, which exempted foreign carriers from this requirement. *See* [DE 50-1].

3. All airlines need to engage in cargo or ground handling. Cargo handling and ground handling is the unloading of luggage or cargo from an airplane. At MIA, cargo or ground handling can be accomplished in one of three ways: (1) an airline can utilize its own work force to ground handle itself, (2) an airline can engage a General Aviation Service Provider (GASPer) to provide ground-handling, and (3) an airline can, in certain limited circumstances, hire the workforce of another airline to perform this function. *See* [DE 50-3].

4. In the event that an airline wants to hire another airline's workforce, both the selling and purchasing airline must comply with Operational Directive No. 00-01, Cargo Handling Services at Miami International Airport ("the Cargo Policy"). *See* [DE 50-3] at Exhibit A.

5. The Cargo Policy generally restricts the ability of an airline to ground handle for other airlines. For example, an airline with a ground lease at MIA can only sell ground handling services to a maximum of three other airlines, excepting airlines in which the selling airline has an equity position or which are code-shares. Moreover, when it sells such services, it must provide the County seven percent (7%) of the gross revenues it derives from such sales. *See* [DE 50-3] at Exhibit A. In its response to the County's request for admissions, Amerijet admitted that "all required fees to the County were paid for the services alleged in paragraph 15 of the First Amended Complaint." *See* Exhibit 1.

6. In the event that an airline wishes to use a GASPer to ground handle, the airline must select from the pool of pre-qualified firms which have been issued permits by the County for this function on the airport. Those firms were procured via a competitive process. *See* [DE 50-3].

7. The purpose of these limitations is to avoid congestion at the checkpoints leading to the airfield and on the airfield itself, and to minimize safety risks. Cargo and ground handling operations involve substantial amounts of mobile equipment. MIA has historically been concerned that allowing unconstrained ground handling will cause gridlock to develop at the checkpoints and cause safety concerns on the airfield. Moreover, given limited amounts of space on the ramp for storage of all materials, including ground handling equipment, the County determined that the unlimited provision of ground handling was unwise. *See* [DE 50-3].

8. Notwithstanding these restrictions on cargo and ground handling, international passenger traffic and cargo traffic at MIA has grown substantially since 2010. Since 2010, international passenger traffic has grown by approximately fifteen percent at MIA. This is the highest rate of growth of foreign traffic at any comparable U.S. airport. *See* [DE 50-3].

9. Amerijet is a cargo airline that operates at MIA. Amerijet is a signatory to the Airline Use Agreement ("AUA") at MIA. *See* [DE 50-3] at Exhibit B. The AUA specifically includes the Cargo Handling policy. An airline is not required to execute the AUA to operate at MIA, though execution of that AUA grants the airline certain benefits. *See* [DE 50-1].

10. Amerijet also leases warehouse space at MIA. That lease as well restricts the ability of Amerijet to ground handle other airlines, except as specifically authorized by the County. *See* [DE 50-3] at Exhibit C.

11. The County Living Wage Ordinance was enacted in 1999 by Miami-Dade County Ordinance 99-44. *See* Defendant Miami-Dade County's Rule 7.5 Statement of Facts in Opposition to Plaintiff's Motion for Partial Summary Judgment, Affidavit of Milton Collins, Exhibit 2 [DE 50-2]. The purpose of the Living Wage Ordinance is to ensure that:

> public expenditure… be spent only with deliberate purpose to promote the creation of full-time, permanent jobs that allow citizens to support themselves and their families with dignity. Sub-poverty level wages do not serve the public purpose. Such wages instead place an undue burden on taxpayers and the community to subsidize employers paying inadequate wages by providing their employees social services such as health care, housing, nutrition, and energy assistance.

12. The Living Wage Ordinance does not apply to all employers in Miami-Dade County. Instead, it only applies to employers who are under contract to Miami-Dade County, or who transact business at MIA via a permit or lease. An employer who does not wish to be bound by the terms of the Living Wage Ordinance is free to ignore its requirements, so long as it does no business with the County. *See* [DE 50-2].

13. The Living Wage Ordinance, moreover, is limited in scope and has no extraterritorial effect. It does not apply to all employees working for a particular employer; instead, it only applies to those employees providing services pursuant to the employer's contract with the County. For example, if the County entered into an agreement with a janitorial company to clean the Steven P. Clark Center, only those employees working at the Steven P. Clark Center would be covered by the Living Wage Ordinance. The Living Wage Ordinance

would not require all of that company's employees, worldwide, to be paid a living wage. *See* [DE 50-2].

14. The Living Wage Ordinance requires General Aeronautical Service Providers providing baggage and cargo handling services, if provided via permit or lease at MIA, pay their employees a living wage. *See* [DE 50-2].

15. The County has never construed the Living Wage Ordinance to apply to any airline which self-performs any covered service with its own work-force. The County does not believe that, as currently drafted, the Living Wage Ordinance can apply to any airline self-performing work with its own employees. An airline self-performing services with its own workforce is not "providing" services under the Living Wage Ordinance, and the Living Wage Ordinance does not apply to these internally performed functions. *See* [DE 50-2].

16. Therefore, if a cargo airline chooses to utilize its own employees to ground handle inbound or outbound cargo, the airline is not obligated to pay those employees Living Wage, or otherwise comply with the Ordinance. *See* [DE 50-2].

17. If, however, a cargo airline chooses to hire a third party to provide ground handling services, that third party provider must provide a living wage to its employees providing those ground handling services. *See* [DE 50-2].

18. The only way, therefore, an airline can be exposed to any obligation under the Living Wage Ordinance is if it sells services to other airlines. For example, if Cargo Airline A utilized the workforce of Cargo Airline B to perform ground handling, Cargo Airline B's workers would need to be paid a living wage for that portion of time they were engaged in ground handling for Cargo Airline A. *See* [DE 50-2].

19. The County has never sought to impose the Living Wage Ordinance against Amerijet where Amerijet employees are performing services, including ground handling and warehousing services, for Amerijet flights. The County does not have the legal authorization under the Living Wage Ordinance to impose the Ordinance's requirements against Amerijet in that circumstance. *See* [DE 50-2]. Any attempt by any employee to impose the LWO against Amerijet in such circumstance would be incorrect.

20. However, the County was informed that Amerijet was providing ground handling services to British Airways. By providing these services to another airline, Amerijet brought itself within the reach of the ordinance. Accordingly, the County, on June 7, 2010, sought

information from Amerijet related to the wages paid to the workers providing services to British Airways.  *See* [DE 50-2] at Exhibit B.  The County has not issued Amerijet a notice of violation of the Living Wage Ordinance.

21.    The Living Wage Ordinance does not stipulate the manner in which an employer must offer services to third parties.  It does not require employers to offer breaks or rest times, it does not mandate provision of vacation days, it does not require that cargo handlers sell their services at any price, or make any disclosure as to the component elements of their pricing.  It does not specify the amount of manpower an employer must provide, or the terms under which that manpower must be provided.  *See* [DE 50-2].

22.    At MIA, the Living Wage is enforced by employees of the Miami-Dade County Aviation Department.  Those employees are "covered persons" pursuant to 14 CFR 15, and may review sensitive security information without violating Federal law.  *See* [DE 50-2].

23.    At no time have the MDAD employees charged with the review of the Living Wage Ordinance sought to compel the disclosure of Amerijet's security plans, policies, and procedures. *See* [DE 50-2].

15.    MDAD's records do not reflect any determination in 2008 or 2007 that a company known as Centurion/Cielos was entitled to cargo handle for Alitalia Airlines without complying with the Living Wage Ordinance.  To the extent that MDAD failed to enforce the Living Wage Ordinance against Centurion/Cielos, or, indeed any airline, such failure is the result of inadvertence rather than a conscious decision to exempt some airlines providing third party ground handling services but not others.  *See* [DE 50-2].

Dated this 22nd day of October 2013.

    Respectfully submitted,

    R. A. CUEVAS, JR.
    MIAMI-DADE COUNTY ATTORNEY

  By: /s/ David M. Murray
    David M. Murray
    Florida Bar No. 291330
    Assistant County Attorney
    P. O. Box  025504
    Miami, Florida 33102-5504
    Telephone: (305) 876-7040
    Facsimile:  (305) 876-7294

CASE NO.:  12-22304-CIV-COOKE/TURNOFF

Email: dmmurray@miami-airport.com

Eric A. Rodriguez
Florida Bar No. 970875
Assistant County Attorney
111 N.W. 1st Street, Suite 2810
Miami, Florida 33128
Telephone:  (305) 375-5151
Facsimile:    (305) 375-5634
Email:  EAR2@miamidade.gov

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via electronic mail this 22nd day of October, 2013 to:

Joan M. Canny, Esq.
Amerijet International, Inc.
*Attorney for Plaintiff*
2800 South Andrews Avenue
Fort Lauderdale, FL  33316
Telephone No. 954.320.5367
Facsimile No.  305.423.3246
jcanny@amerijet.com

/s/ David M. Murray
Eric A. Rodriguez
David M. Murray
Assistant County Attorney