UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-22304-Civ-COOKE/TURNOFF

AMERIJET INTERNATIONAL, INC.,
a Florida corporation,

    Plaintiff,

vs.

MIAMI-DADE COUNTY, FLORIDA,
a political subdivision of the State of Florida,

    Defendant,
_____/

**OMNIBUS ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

THIS CASE is before me upon Plaintiff Amerijet International, Inc.'s Motion for Partial Summary Judgment on Counts I and II (ECF No. 43), and Defendant Miami-Dade County's Motion for Summary Judgment (ECF No. 51). Both motions before me have been fully briefed and are ripe for adjudication.

I have reviewed both motions, including the respective response and reply, the record, and the relevant authorities. For the reasons provided below, Plaintiff Amerijet International, Inc.'s Motion for Partial Summary Judgment on Counts I and II is **DENIED**, and Defendant Miami-Dade County's Motion for Summary Judgment is **DENIED in part and GRANTED in part.**

**I.    PROCEDURAL BACKGROUND**

On June 20, 2012, Amerijet International, Inc. brought a declaratory action against Miami-Dade County (the "County") that sought injunctive relief against the County's enforcement of the Living Wage Ordinance (the "LWO"), Miami-Dade Code Section 2-8.9, on grounds that the ordinance is unconstitutional on its face and as applied to Amerijet. Specifically, Amerijet avers that the Airline Deregulation Act, the Federal Aviation Administration Authorization Act, various Transportation Security Administration

1

regulations, and various Open Skies treaties preempt the LWO (Count I). Amerijet's initial Complaint also alleges that the LWO violates the Commerce Clause of the U.S. Constitution (Count II), as well as the Florida Constitution and the Miami-Dade County Home Rule Charter (Count IV). On March 1, 2013, Amerijet filed its First Amended Complaint alleging a violation of the Equal Protection Clause (Count III). Amerijet requests that I declare the LWO unconstitutional and enjoin Miami-Dade County from enforcing the ordinance against Amerijet. The County filed its Motion to Dismiss the Complaint because Amerijet purportedly lacked standing to challenge the ordinance. Both parties subsequently moved for summary judgment.

## II. FACTUAL BACKGROUND

Amerijet International, Inc. ("Amerijet") is a small air carrier that transports cargo, including property and mail, between the United States and several Caribbean and Latin American countries. Pl.'s Stmnt. of Facts ¶¶ 1, 3. Amerijet's domestic flights originate and terminate at Miami International Airport ("MIA"). Pl.'s Stmnt. of Facts ¶ 5. Miami-Dade County (the "County"), a political subdivision organized under the laws of the State of Florida, is the proprietor of MIA. Amerijet currently has a five-year lease with the County for warehouse space and other flight operations at MIA. Pl.'s First Amended Compl. ¶ 13. In addition to flight operations, Amerijet provides ramp services and in-warehouse cargo handling services ("covered services") for other airlines. Pl.'s Stmnt. of Facts ¶ 6.

In 1999, the County enacted the Living Wage Ordinance (the "LWO"), Miami-Dade County Ordinance 99-44, Miami-Dade Code 2-8.9, which required that County service contract employees and County employees be paid the prevailing "living wage" rate; however, the ordinance is silent on how the rate would be calculated. Def.'s Stmnt. Facts ¶ 11; Miami-Dade Code § 2-8.9. In addition to enacting a "living wage," the ordinance permits a service contract employee to bring an action for failure to pay the living against that service contractor in any court of competent jurisdiction. Miami-Dade Code 2-8.9. The LWO does not apply to all Miami-Dade County employers; rather, it applies only to employers who provide covered services pursuant to a contract with the County, or employers who transact business at MIA via permit or lease. Def.'s Stmnt. Facts ¶¶ 12-15. General Aeronautical Service Providers ("GASPers") that provide covered services are

2

required to pay the living wage. Def.'s Stmnt. Facts ¶ 14. As it relates to Amerijet, the County has never construed the LWO to apply to an airline that self-performs any covered service with its own work force – only those that sell their services to another airline. Def.'s Stmnt. Facts. ¶¶ 15-17.

In June 2010, Amerijet received correspondence from the Miami-Dade County Department of Small Business Development (the "SBD"), the agency tasked with enforcing the LWO, stating that the SBD was investigating Amerijet's failure to comply with the LWO for services it provided to British Airways. Pl.'s Stmnt. Facts ¶¶ 16-17. The investigation was the result of a covered employee's complaint that Amerijet provided cargo services for British Airways and other airlines without paying the living wage. Pl.'s Stmnt. Facts ¶ 18. The County Attorney's Office advised the SBD that the LWO applied to Amerijet because Amerijet provided cargo handling services for a third party. Pl.'s Stmnt. Facts ¶ 22. On April 29, 2011, Amerijet decided to cease providing covered services for third party airlines, and, instead, outsourced cargo handling to an on-airport ground services contractor. Pl.'s Stmnt. Facts ¶¶ 27-30. And, in April 2012, several formerly "covered" employees bought suit against Amerijet for back pay and penalties under the LWO. Pl.'s Stmnt. Facts ¶ 31. The suit was subsequently settled out of court, but not before Amerijet brought the instant declaratory action against the County raising the issues addressed in this Order. Pl.'s Stmnt. Facts ¶ 33.

### III.   CROSS-MOTIONS FOR SUMMARY JUDGMENT

#### A.   Legal Standard

Summary judgment "shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642 (11th Cir. 1997) (quoting Fed. R. Civ. P. 56(c)) (internal quotations omitted); *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999). Thus, the entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court should not grant

summary judgment unless it is clear that a trial is unnecessary, and any doubts in this regard should be resolved against the moving party. *Adicks v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

"The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Id*. Rule 56 "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotation marks omitted).

"A factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Damon*, 196 F.3d at 1358. When deciding whether summary judgment is appropriate, "the evidence, and all inferences drawn from the facts, must be viewed in the light most favorable to the non-moving party." *Bush v. Houston County Commission*, 414 F. App'x 264, 266 (11th Cir. 2011).

### B.  Issues Presented

The parties' motions for summary judgment raise the following issues: (1) whether the County's Cargo Policy violates the U.S. Constitution; (2) whether Amerijet International, Inc. has standing to challenge the Living Wage Ordinance; (3) whether the Living Wage Ordinance is preempted by the Airline Deregulation Act, the Federal Aviation Administration Authorization Act, Transportation Security Administration regulations, and various Open Skies Treaties thus violating the Supremacy Clause of the U.S. Constitution (Count I); (4) whether the Living Wage Ordinance violates the Commerce Clause of the U.S. Constitution (Count II); (5) whether application of the Living Wage Ordinance to Amerijet violates the Equal Protection Clause by treating similarly situated air carriers differently (Count III); and (6) whether the Living Wage Ordinance exceeds the powers

4

granted to the County by the Florida Constitution and the Miami-Dade County Home Rule Charter (Count IV).

### C.     Analysis

#### 1.     The Constitutionality of the County's Cargo Policy Is Not Properly Before this Court.

As a threshold matter, I do not consider Amerijet's assertion that the County's cargo handling policy is void and unenforceable because Amerijet clandestinely raised the argument for the first time in its Motion for Partial Summary Judgment. *See* Pl.'s Mot. Summ. J. at 1, 18 ("Plaintiff Amerijet … respectfully moves for … declaratory and permanent injunctive relief that application of the Miami-Dade 'Living Wage' Ordinance to air carriers such as Amerijet -- *whether directly or by operation of the cargo handling and ground handling policies of the County* -- is invalid and unenforceable…."; "WHEREFORE … Plaintiff respectfully requests that this Court: A. Adjudge and declare that the County Living Wage Ordinance *and the ground handling and cargo handling policies of the County* violate the Constitution and laws of the United States….") (emphasis supplied). Neither Amerijet's original nor its Amended Complaint stated a prayer for such relief. A plaintiff may not raise a new claim at the summary judgment stage because the opposing party has no notice of the newly-raised claim based on the allegations set forth in the operative complaint. *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004).

"Liberal pleading does not require that, at the summary judgment stage, defendants must infer all possible claims that could arise out of facts set forth in the complaint. The proper procedure for [Amerijet] to assert a new [] claim was to seek to amend [its] complaint." *Id.*; *see also Davis v. Cothern*, 482 F. App'x 495, 497 (11th Cir. 2012) ("Regarding [Plaintiff]'s state law claims raised for the first time in her response to the defendants' motion for summary judgment, our precedent is clear: 'At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed.R.Civ.P. 15(a).'"); *Newman v. Ormond*, 396 F. App'x 636 (11th Cir. 2010) (affirming district court's decision to deny without discussion newly-raised claims in plaintiff's motion for summary judgment because the liberal pleading standard for civil

complaints does not afford plaintiffs an opportunity to raise new claims at summary judgment stage).

**2. Amerijet has standing to bring a facial and as applied challenge to the Living Wage Ordinance.**

Standing "requires federal courts to satisfy themselves that 'the plaintiff has alleged a personal stake in the outcome of the controversy' as to warrant *his* invocation of federal-court jurisdiction." *Summers v. Earth Island Institute*, 555 U.S. 488, 493 (2009). Standing is more than a mere pleading requirement; it is an indispensible part of the plaintiff's case. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). While general factual allegations may suffice at the pleading stage, the plaintiff must set forth, through affidavits or other evidence, specific facts to satisfy standing at the summary judgment stage. *Id.*; *Lujan v. National Wildlife Federation*, 497 U.S 871, 889 (1990).

Standing requires the plaintiff to satisfy three elements. First, the plaintiff must have suffered an "injury in fact" – an invasion of a legally protected interest that is: (a) concrete and particularized; and (b) actual or imminent. *Id.* at 560. Second, the must exist a causal connection between the injury and the conduct complained of – that is the injury has to be traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. *Id.* at 560. Third, it must be likely that the injury will be redressed by a favorable decision from the court. *Id.* at 561. The party invoking federal jurisdiction is tasked with establishing the elements of standing.

Amerijet satisfies the three elements for standing to warrant federal jurisdiction over this controversy. First, Amerijet has suffered an actual "injury in fact." The Department of Small Business Development (the "SBD") is currently investigating Amerijet. If Amerijet failed to comply with the LWO, this could result in sanctions payable to the County that range from 10-30% of the amount of underpayment of wage and/or benefits. In addition, Amerijet faces a sum of up to five hundred dollars ($500.00) for each week for each covered employee found not to have been paid the living wage. This does not even include the claims by covered former employees. Without a doubt, Amerijet has suffered an injury, and remains open to future injury for claims by other covered employees that have not brought suit or filed a complaint with the SBD. Second, Amerijet's injury is caused by the County's

application of the LWO to Amerijet's operations. But for the County's enactment of the LWO, Amerijet would not be subject to its requirements. Nor would Amerijet be subject to sanction for its failure to comply with the ordinance. These facts coupled with the threat of litigation due to the ordinance's private right of action makes Amerijet's injury traceable to the County's action. Third, a favorable decision from this Court will ameliorate, or virtually eliminate, Amerijet's injury. Should I find the LWO to be unconstitutional, Amerijet will no longer face sanctions by the County or the threat of litigation by formerly covered employees. Thus, Amerijet passes constitutional muster on the issue of standing, and summary judgment in favor of the County is **DENIED**.

       3.       The Living Wage Ordinance Does Not Violates the Supremacy Clause of the U.S. Constitution.

       a. The Airline Deregulation Act

Under the Airline Deregulation Act (the "ADA"), "a state, political subdivision of a state, or political authority of at least two states may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation." 49 U.S.C. § 41713(b)(1). This preemption clause serves to further the Congress' intent behind the ADA, which "was designed to promote 'maximum reliance on competitive market forces.'" *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 230 (1995). Essentially, Congress sought to prevent the states from "'impos[ing] their own public policies or theories of competition or regulation on the operations of an air carrier.'" *Branche v. AirTran Airways, Inc.*, 342 F.3d 1248, 1255 (11th Cir. 2003); *Wolens*, 513 U.S. at 228 ("Congress could hardly have intended to allow the states to hobble [competition for airline passengers] through the application of restrictive state laws.")

In order to determine whether the ADA preempts a state regulation, we must consider the meaning of the phrase "related to." In *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992), the Court defined the phrase "related to" to mean "having a connection with, or reference to, airline 'rates, routes, or services.'" *Id.* at 384. This is even if the effect on rates, routes, or services "is only indirect." *Rowe v. New Hampshire Motor Transport Ass'n*, 552 U.S. 364, 370 (2008) (quoting *American Airlines, Inc. v. Wolens*, 513 U.S. 374, 386

(1995)). In *Rowe*, the Court held that "federal law does not preempt state laws that affect rates, routes, or services in 'too tenuous, remote, or peripheral a manner' . . . state laws whose 'effect' is forbidden' under federal law are those with a '*significant* impact' on carrier rates, routes, or services.'" *Rowe*, 552 U.S. at 375 (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 388, 390 (1992)).

As a threshold matter, Congress sought to deregulate the bargained-for aspects of the air carrier-air passenger relationship. *Branche v. AirTran Airways, Inc.*, 342 F.3d 1248, 1255 (11th Cir. 2003) ("through the ADA Congress sought to leave the bargained-for aspects of the air carrier-air passenger relationship to the workings of the market . . . ."). The LWO does not reach, not is it intended to reach, the air carrier-air passenger relationship. In fact, the LWO relates to the air carrier-third party vendor relationship.

Even further, the LWO does not implicate Amerijet's, or any other airlines', operations as an air carrier engaged in air transportation. The LWO is intended to apply to third party service contractors that provide "covered services" to an airline, not the airline itself. The plain language of the ADA's preemption clause specifically refers to the "price, route, or service of an air carrier that may provide air transportation." 49 U.S.C. § 41713(b)(1). None of the covered services addressed in the LWO relate to air transportation. It is only when an air carrier or airline provides services outside the realm of air transportation that it brings itself within the orbit of the LWO.

Because the County sought to regulate third party service contractors, and not air carriers, performing non-transportation functions at Miami International Airport ("MIA"), I hold that the ADA does not preempt the LWO. To hold otherwise would preempt every law that regulates a business providing services to airlines, whether it is a food vendor, janitor, or cargo handler, even though the business has some remote or tenuous affect on an airline's rates, routes, or services. Congress could not have intended for the ADA to have such an expansive reach. If so, the ADA would preempt virtually every regulation. Thus, summary judgment is **GRANTED** in favor of the County on this issue. Since I find that the LWO is not preempted by the ADA, I need not reach the County's waiver and "proprietary powers" arguments.

8

### b. The Federal Aviation Administration Authorization Act

The Federal Aviation Administration Act (the "FAAA") borrowed the ADA's preemption language with the key difference being that the FAAA applied to "any motor carrier . . . with respect to the transportation of property." 49 U.S.C. § 14501(c)(1); *Rowe v. New Hampshire Motor Transport Ass'n*, 552 U.S. 364, 368 (2008). However, the FAAA mirrors the ADA's preemption analysis. Since the LWO does not apply to Amerijet's services as an air carrier, but rather as a service contractor engaged in non-transportation services, I find that it is not preempted for the same reasons it is not preempted by the ADA. Thus, summary judgment is **GRANTED** in favor of the County.

### c. Transportation Security Administration Regulations

Amerijet posits, but the County disputes, that the LWO's "Implementation" and "Compliance" provisions require Amerijet to disclose Sensitive Security Information ("SSI") in violation of Transportation Security Administration ("TSA") regulations, specifically 49 C.F.R. § 15.5; 49 C.F.R. § 1520.5. Pl.'s First Amended Compl. ¶ 53; Def.'s Mot. Summ. J. at 11-12. However, Amerijet's position fails for several reasons. First, the County aptly points out that Amerijet has not produced any facts to support its claim that the LWO requires the disclosure of SSI. In fact, the relevant statutory language defines SSI as "information obtained or developed in the conduct of securities activities, including research and development." 49 C.F.R. § 15.5. A literal reading of that definition hardly includes wage and benefit information, especially when I consider the examples that constitute SSI. For instance, the statute lists security programs and contingency plans, security directives, information circulars, performance specifications, security inspection or investigative information to name a few. *Id.* Next, even if the wage and benefit information is considered SSI, TSA regulations permit an airline to disclose SSI to "persons with a need to know . . . when the person needs the information to represent a <u>covered person</u> in connection with any judicial or administrative proceeding regarding those requirements." 49 C.F.R. § 15.11. A "covered person" includes the "airport operator" – the County in this instance. 49 C.F.R. § 15.7. Amerijet's argument that TSA regulations preempt the LWO

fails for the reasons stated; summary judgment is **GRANTED** in favor of the County on this issue.

### d. Open Skies Agreements

Amerijet claims that various Open Skies Agreements between the United States and some 100 foreign nations preempt the LWO. Amerijet cites two provisions to support its claim. The first provision is Article 12 of the Air Transport Agreement attached as Exhibit K to Amerijet's Motion for Summary Judgment on Counts I and II, ECF No. 46-1, which states, "Each party shall allow prices for air transportation to be established by airlines of both Parties based upon commercial considerations in the marketplace." The second provision is Article 8(3) of the same Air Transport Agreement, which states:

> Each airline shall have the right to perform its own ground-handling in the territory of the other Party ("self-handling") or, at the airline's option, select among competing agents for such services in whole or in part. The rights shall be subject only to physical constraints resulting from considerations of airport safety. Where such considerations preclude self-handling, ground services shall be available on an equal basis to all airlines; charges shall be based on the costs of services provided; and such services shall be comparable to the kind and quality of services as if self-handling were possible.

I, however, fail to see how these provisions preempt the LWO. First, the LWO does not, in any way, regulate an airline's price, fare, rate or charge for the carriage of passengers, baggage, or cargo in air transportation. Rather, the ordinance requires that third party service contractors pay employees that perform covered services a living wage. It does not have anything to do with the rate an airline charges a shipper or passenger for transportation services. Second, the LWO does not limit an air carrier's ability to perform its own ground-handling. In fact, air carriers that self-handle are exempt from the LWO. Def.'s Stmnt. Facts ¶¶ 16, 19. Should Amerijet decide not to self-handle, it may choose from a pool of pre-qualified firms that have been issued permits by the County to perform ground-handling. Def.'s Stmnt. Facts ¶ 6. Since the LWO does not affect an airline's price, fare, rate or charge for air transportation, nor does it limit an air carrier's ability to self-handle or otherwise choose from competing agents to provide covered services, summary judgment is **GRANTED** in favor of the County on this issue.

> **4.    The Living Wage Ordinance does not violate the Commerce Clause of the U.S. Constitution.**

Amerijet's Commerce Clause[1] argument is strikingly similar to its Supremacy Clause argument. Specifically, Amerijet asserts that because it is a common carrier of cargo in interstate and/or foreign commerce, the regulatory power granted by the Commerce Clause to the federal government is exclusive to it in the domain of air transportation business, and consequently, any attempted state action that seeks to regulate covered services is invalid and unenforceable. Pl.'s Mot. Summ. J. at 15-16. However, Amerijet's argument completely misses the Commerce Clause mark.

Courts utilize a two-tiered analysis to determine whether a state law contravenes the Commerce Clause. First, courts "must determine whether the state law discriminates against out-of-state residents on its face." *Locke v. Shore*, 634 F.3d 1185, 1192 (11th Cir. 2011). A law that facially discriminates against out-of-state residents is analyzed under heightened scrutiny, which requires the state to show that it has no other (non-discriminatory) means to advance a legitimate local interest. *Id.*; *United Haulers Assoc. v. Oneida-Herkimer Solid Waste Mgt. Auth.*, 550 U.S. 330, 339 (2007); *see also Florida Transp. Servs., Inc.*, 703 F.3d at 1244 ("Discrimination against interstate commerce in favor of local business or investment is *per se* invalid, save in a narrow class of cases in which the municipality can demonstrate, under rigorous scrutiny, that it has no other means to advance a legitimate local interest.") (quoting *C&A Carbone, Inc. v. Town of Clarkstown*, 511 U.S. 383, 392 (1994)).

If a law does not facially discriminate against out-of-state residents, courts determine whether "the burden imposed on [interstate] commerce is clearly excessive in relation to the

---

[1] The Commerce Clause grants to the federal government the power to regulate interstate and foreign commerce. U.S. Const. art. I, § 8, cl. 3. "Courts have inferred from the Commerce Clause a dormant or negative implication that forbids a state or municipality from impeding the flow of goods and services across state borders, or from favoring in state economic interests at the expense of out-of-state economic interests." *See Southern Waste Sys., LLC v. City of Delray Beach*, 420 F.3d 1288, 1290 (11th Cir. 2005). "This negative command prevents a State from jeopardizing the welfare of the Nation as a whole by placing burdens on the flow of commerce across its borders that commerce wholly within those borders would not bear." *Florida Transp. Servs., Inc. v. Miami-Dade Cnty.*, 703 F.3d 1230, 1243 (11th Cir. 2012) *cert. denied*, 134 S. Ct. 116 (U.S. 2013) (quoting *Am. Trucking Ass'ns v. Mich. Pub. Serv. Comm'n*, 545 U.S. 429, 433 (2005)). The Commerce Clause applies to local and municipal laws by forbidding a state's political subdivisions from "curtailing the movement of articles of commerce through subdivisions of the State rather than through the State itself." *Id.* (quoting *Fort Gratiot Sanitary Landfill, Inc. v. Mich. Dep't of Natural Res.*, 504 U.S. 353, 361 (1992)).

putative local benefits." *Locke*, 634 F.3d at 1192 (quoting *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)) (alteration in original). Thus, the two ways a state law can violate the Commerce Clause are by: (1) discriminating against out-of-state residents; or (2) placing an undue burden on interstate commerce. *Florida Transp. Servs.*, 703 F.3d at 1244. Here, the undisputed evidence demonstrates neither. A plain reading of the LWO reveals that it does not favor local service contractors. To the contrary, the LWO applies equally to all service contractors that provide covered services, regardless of residency.

In instances where a state law is neutrally-worded, courts consider: (1) "whether the state law excludes a class of predominantly out-of-state residents from a particular market;" (2) "whether the state statute imposes costs on out-of-state residents that in-state residents do not have to bear;" and (3) "whether the state legislature was motivated by protectionist purposes in passing the law at issue." *Id.* (citing *Exxon Corp. v. Governor of Md.*, 437 U.S. 117, 137 (1978); *Hunt*, 432 U.S. at 348-49; *Granholm v. Heald*, 544 U.S. 460, 472 (2005); *H.P. Hood & Sons v. DuMond*, 336 U.S. 525, 538 (1949)).

The record is bereft of any proof that the LWO excludes non-Florida residents from the market, or that it imposes costs on out-of-state residents that Florida residents do not have to bear. In fact, there is no evidence that there is a burden on out-of-state residents, or on interstate commerce. Amerijet's contention that the LWO discriminates against non-local airlines in favor of GASPers is puzzling given that Amerijet – a small all-cargo airline incorporated under the laws of Florida – is a local business that a regulation in violation of the commerce would seek to protect. Rather than being protectionist of in-state service contractors, the purpose of the LWO is "to minimize the risks that underpaid workers over-utilize the County safety net for 'social services such as health care, housing, nutrition, and energy assistance.'" Def.'s Resp. Pl.'s Mot. Summ. J. at 18 (quoting Miami-Dade County Code § 2-8.9; Miami-Dade County Ordinance 99-44). Further, the record is void of any evidence that the burdens placed on interstate commerce outweigh the benefits of the LWO. Accordingly, the LWO survives Amerijet's Commerce Clause challenge.

Since the LWO neither discriminates on its face because it applies equally to all third party contractors, nor does it place an undue burden upon interstate commerce, the LWO does not run afoul of the Commerce Clause. Thus, summary judgment is **GRANTED** in

favor of the County, and I need not consider the County's argument that as a market participant, the dormant commerce clause is inapplicable.

**5.     Amerijet Fails to Produce Any Facts to Support its Claim that Application of the LWO to Amerijet Violates the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution.**

Amerijet asserts that it "has been arbitrarily or intentionally been treated differently from others who are similarly situated as to application of the LWO and there is no rational basis for the difference in treatment, and thus County has violated the Equal Protection Clause. Pl.'s Amended Compl. ¶ 80. Specifically, Amerijet claims that Centurion Air Cargo/Cielos Airlines provided cargo-handling services on behalf of Alitalia Airlines without having to comply with the LWO. Pl.'s Stmnt. Facts ¶ 23. To support its claims, Amerijet produces a 2007 email between the County Attorney's Office and the SBD that purportedly exempts Centurion from compliance with the LWO because it is a certified air carrier. *Id.* However, the County disputes that the LWO has been applied in an uneven manner; calling its alleged failure to enforce the LWO against Centurion inadvertent, rather than a legal determination that the LWO does not apply to Centurion. Def.'s Stmnt. Facts ¶ 15.

Even if I take the 2007 email at face value, it does not raise a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-8 (1986) ("the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."). The email on which Amerijet relies simply states that, "Centurion Air Cargo is a certified air carrier (Airline) operating at MIA." Pl.'s Stmnt. Facts, Ex. L. I can hardly infer that Centurion is exempt from complying with the LWO based upon such scant language. Amerijet fails to produce any other evidence that proves the County is treating it unequally as compared to Centurion. When considered against the Miami-Dade Aviation Department's Associate Director of Minority Affairs Milton Collins' affidavit, the email fails short. Amerijet bears the burden of proof on all claims in the Amended Complaint. Without proof of any kind, there is not much for me to consider. To that end, summary judgment is **GRANTED** in favor of the County on Amerijet's equal protection claim.

### 6. Amerijet Fails to Produce any Evidence that the LWO Violates the Florida Constitution and/or Miami-Dade County Charter.

Amerijet requests that I find that the LWO's creation of a private right of action exceeds the powers granted to the County pursuant to the Florida Constitution and the Miami-Dade County Home Rule Charter. Yet, Amerijet does not cite to any specific provision of the Florida Constitution or Miami-Dade Home Rule Charter that conflicts with the LWO. The County and I are left to divine Amerijet's arguments. What is even more disturbing is Amerijet has failed to produce even a scintilla of evidence to support its claim.

Amerijet cites cases that are wholly inapposite. For instance, none of Amerijet's cited cases discuss or interpret the Florida Constitution or the Miami-Dade County Home Rule Charter. For instance, Amerijet cites *Quela v. Payco-General American Credits, Inc.*, 84 F. Supp. 2d 956 (N.D. Ill. Feb. 17, 2000) in support; however, this case interprets home rule pursuant to the Illinois Constitution, and is of little use to our interpretation of Florida law. This issue should left to the Florida courts to decide since it is a matter of first of impression.

A "district court may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. §1367(c)(3). Indeed, the Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088 (11th Cir.2004). *Adams v. Rothstein*, No. 11-61688-CIV, 2012 WL 1605098 (S.D. Fla. May 8, 2012).

Exercising my discretionary power to retain or release jurisdiction over the state law claims that remain following dismissal of the sole federal law claim, I elect to decline jurisdiction. Note, "pendent jurisdiction is a doctrine of discretion, not of plaintiff's right, and hence the power need not be exercised in every case in which it is found to exist." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966). "With respect to supplemental jurisdiction, a federal court has subject-matter jurisdiction over specified state-law claims, see §§1367(a), (c), and its decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary, *see, e.g., Osborn v. Haley*, 549 U.S. 225, 245, 127 S. Ct. 881, 166 L.Ed.2d 819." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 129 S. Ct. 1862, 1864 (2009). Therefore, Count IV is **DISMISSED** *without prejudice*.

## IV. CONCLUSION

Having reviewed the arguments and the record, I find that there are no genuine issues of material fact for me to consider. Accordingly, summary judgment is appropriate.

It is, therefore, **ORDERED and ADJUDGED** that:

1. Amerijet has standing to bring the instant case or controversy;

2. Motion for Summary Judgment is **GRANTED** in favor of Defendant Miami-Dade County on Count I;

3. Motion for Summary Judgment is **GRANTED** in favor of Defendant Miami-Dade County on Count II;

4. Motion for Summary Judgment is **GRANTED** in favor of Defendant Miami-Dade County on Count III;

5. Count IV of the Amended Complaint is **DISMISSED** *without prejudice*; and

6. The Clerk shall **CLOSE** this case.

**DONE and ORDERED** in chambers at Miami, Florida, this 5th day of March 2014.

_____
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*William C. Turnoff, U.S. Magistrate Judge*
*Counsel of record*